IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG RICHARD,<br><br>    Plaintiff,<br><br>    v.<br><br>SAETEURN, et al.,<br><br>    Defendants. | No.  2:21-CV-1015-KJM-DMC-P<br><br><br>ORDER |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint, ECF No. 1.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Saeteurn, a correctional officer at California Health Care Facility (CHCF); (2) Alcoriza, a correctional officer at CHCF; and (3) Tayler, a registered nurse at CHCF; and (4) Noriega, a sergeant/lieutenant correctional supervisor at CHCF. ECF No. 1, pg. 2. Plaintiff articulates one (1) claim. See id. at 3. However, the alleged facts indicate a total of two (2) claims: an Eighth Amendment excessive force claim and an Eighth Amendment failure to treat a medical condition claim. See id. at 3-15.

Plaintiff alleges that he "was involved in a physical altercation with another prisoner and was pepper sprayed." Id. Plaintiff was in full compliance with the present correctional officer's instructions by the time Defendant Saeteurn arrived on the scene. See id. Defendant "Saeteurn proceded [sic] to handcuff [Plaintiff] from behind." Id. "[Plaintiff] informed [Defendant Saeteurn] that [Plaintiff] had a severe hand/wrist injury which requires [Plaintiff] to be cuffed from the front." Id. Plaintiff also informed Defendant Saeteurn that Plaintiff had a "doctor's chrono" stating that Plaintiff "cannot be cuffed from the back in order to prevent pain/injury to wrist/hand." Id. Defendant "Saeteurn stated, 'fuck your medical chrono. I can care less about a fuckin' chrono.'" Id. Defendant Saeteurn "proceeded to roughly handcuff me from the rear." Id. Plaintiff "was then escorted to the prison clinic." Id. at 4.

Plaintiff was in "severe pain from the red hot [sic] pepper spray and the need to be decontaminated." Id. Plaintiff also suffered pain in his "hand/wrist do to [Defendant] Saeteurn's excessive force" and "refusal to honor medical chrono." Id. Further, Plaintiff "endured a stab wound in [his] left knee . . . as a result of the altercation with the other prisoner." Id. Plaintiff begged to be decontaminated from being pepper sprayed and begged to receive medical attention

1 | for his injuries.  See id.  Despite Plaintiff's full compliance with the officers' instructions,

2 | Plaintiff "was tossed in a holding cage where [Plaintiff] begged and screamed to be

3 | decontaminated by Defendants Saeteurn and Alcoriza."  Id.  Defendant Saeteurn told Plaintiff to

4 | "be a man and suck it up" and that "that's what [you] get for fighting."  Id.

5 | After Defendant Noriega arrived, Plaintiff "was finally taken to a small bathroom

6 | sink with very little running water and was given 3-4 minutes to decontaminate."  Id.  Plaintiff

7 | was only able to wash some of the pepper spray out of his face.  See id. at 5.  Plaintiff was "not

8 | allowed to wash the pepper spray off of [his] ches[t], stomach, and genital area."  Id.  Plaintiff

9 | was then "quickly shuffled back to the holding cage where [Plaintiff] begged to be properly

10 | decontaminated because [Plaintiff] was burning so bad that it felt like [Plaintiff] was on fire."  Id.

11 | Plaintiff "was again told by [Defendants] Saeteurn and Alcoriza to suck it up and take it like a

12 | man and [that] that should teach me a lesson about fighting in their prison."  Id.

13 | Defendant Taylor, the residential nurse, examined Plaintiff but only recorded

14 | Plaintiff's hand injury.  See id.  Plaintiff also alleges the following of the interaction with

15 | Defendant Taylor:

16-18 | > RN Taylor not only agreed with the officers that that's what I get for fighting, [sic] but informed me that she was too busy to administer medical attention and refused to even acknowledge my visible injuries or the pain I was in and wouldn't even provide medical care for the stab wound which was bleeding [profusely].

19 | Id. at 5-6.

20 | Plaintiff received Defendants Saeteurn, Alcoriza, and Noriega's incident reports

21 | which "falsely stated that [Plaintiff] was provided decontamination for 10 minutes and that

22 | [Plaintiff] was provided clean clothing and that [Plaintiff] had no observable injuries."  Id. at 6.

23 | Plaintiff was escorted back to his unit by Defendants Saeteurn and Alcoriza "while still begging

24 | for medical attention."  Id.  Plaintiff further alleges:

25-27 | > During the next 9-10 days I sent several medical requests to the medical clinic requesting medical attention for burning from the pepper spray and not being allowed to properly decontaminate [and] for my hand/wrist, eye, and stab wound knees. I[t] was not until 9-10 days later I was seen by a doctor who treated my injuries. The doctor provided a wrist/hand brace,

28 | ///

3

pain meds, [and] anti burning cream for the burning sensation I was still experiencing from not being allowed to properly decontaminate.

Id. at 6-7.

Considering the facts above and Plaintiff's pain and suffering from the pepper spray, hand/wrist injury, and stab wound, Plaintiff seeks punitive damages in the sum of fifty-thousand dollars ($50,000.00) from each Defendant and seeks compensatory damages in the sum of fifty-thousand dollars ($50,000.00) from each Defendant.  See id. at 15.  Plaintiff also seeks "reimbursement for any money spent litigating this case."  Id.  Plaintiff has cited to several rules and cases to support his Eighth Amendment claim and has attached several documents to corroborate his allegations.  Id. at 8-41.

## II. DISCUSSION

The Court finds that Plaintiff's Eighth Amendment excessive force claim against Defendant Saeteurn is cognizable.  The Court also finds that Plaintiff's Eighth Amendment failure to treat a medical condition claims against Defendants Saeteurn, Alcoriza, and Taylor are cognizable.  However, Plaintiff fails to sufficiently link the conduct of Defendant Noriega to a specific constitutional or statutory violation.  Defendant Noriega may only be held liable for the constitutional violations of subordinates if he participated in or directed the violations.  Defendant Noriega may not be held liable for merely being a supervisor.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of

4

1  constitutional rights and the moving force behind a constitutional violation may, however, be
2  liable even where such personnel do not overtly participate in the offensive act.  See Redman v.
3  Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

4  When a defendant holds a supervisory position, the causal link between such
5  defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.
6  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
7  1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in
8  civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
9  Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the
10 official's own individual actions, has violated the constitution."  Iqbal, 662 U.S. at 676.

11 Here, Plaintiff mentions Defendant Noriega a couple of times.  However, Plaintiff
12 does not reference specific conduct of Defendant Noriega that would suggest an Eighth
13 Amendment violation without more.  Plaintiff will be provided an opportunity to amend his claim
14 to state what Defendant Noriega did specifically that caused a violation.  For example, Plaintiff
15 must allege Defendant Noriega took X action that caused violation Y.

16

17                              **III.  CONCLUSION**

18 Because it is possible that the deficiencies identified in this order may be cured by
19 amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d
20 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an
21 amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258,
22 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the
23 prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An
24 amended complaint must be complete in itself without reference to any prior pleading.  See id.

25 If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the
26 conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See
27 Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how
28 each named defendant is involved, and must set forth some affirmative link or connection

between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

      Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

      Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  September 30, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

6